UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

SEAN SMALL                                    CIVIL ACTION NO. 06-cv-1114

VERSUS                                        JUDGE HICKS

WARDEN, LOUISIANA STATE                       MAGISTRATE JUDGE HORNSBY
PENITENTIARY

## REPORT AND RECOMMENDATION

**Introduction**

A Caddo Parish jury convicted Sean Small ("Petitioner") of attempted second degree murder and armed robbery arising from a carjacking of an elderly victim. The convictions were affirmed on direct appeal. State v. Small, 850 So.2d 1019 (La. App. 2d Cir. 2003), writ denied, 865 So.2d 75 (La. 2004). Petitioner then filed a post-conviction application and asserted the claims that he now presents in this federal habeas corpus petition: (1) insufficient evidence, (2) ineffective assistance of counsel, and (3) double jeopardy. For the reasons that follow, it is recommended that the petition be denied.

**Sufficiency of the Evidence**

Wilda Ritzheimer, an elderly woman, visited the Brookshire's grocery store on Line Avenue in Shreveport on a Tuesday evening in July 2000 at about 6:30 p.m. She purchased some copper cleaner and walked back toward her car, a gold Cadillac, with her keys in her hand. She pressed the button to open her door and was about to open the door when a man grabbed her hand and took her keys. Mrs. Ritzheimer testified:

> He grabbed my hand and took my keys, and then he shot me. I looked down and I saw the gun. And I said, 'No, no, no' and I said, 'Why are you doing this to me?' And then he shot me a second time, and then I screamed as loud as I could for someone to please help me.

Tr. 539.

Mrs. Ritzheimer testified that she suffered a gunshot wound to her arm that entered and exited without striking bone. She suffered a second gunshot wound to her side, below her ribs, that exited her back and required the removal of her spleen.

Mrs. Ritzheimer denied that she hit the attacker's hand or did anything else to make the gun, which evidence showed was a .45 ACP pistol, fire. She was adamant on the point, testifying, "Oh, I know I didn't, no, sir." Tr. 543. She identified Petitioner in the courtroom as the man who attacked and shot her, saying there was "no doubt in my mind" about the identification. Tr. 547.

Keith Stewart, a Wackenhut security guard assigned to the store, was inside the store when he heard two gunshots. He went outside and saw an elderly white female in a struggle with a light-skinned African-American or Hispanic male. The man was inside the car, and the woman was outside it. Stewart drew his Taurus .38 special revolver and began yelling for people to get out of the way or get down, and he heard a third gunshot.

The man in the car seemed to be struggling to get it started, but he eventually did, and he began to back the car out of the parking spot. At that time, Stewart fired his revolver and saw the passenger's front window explode. The car nonetheless began moving forward, and

Stewart proceeded to fire his remaining five rounds in the direction of the car. Tr. 573-84. Police found three spent .45 caliber casings and six spent .38 caliber casings at the crime scene. The Cadillac was later found in a parking lot. It had several bullet holes in the passenger side.

Sheena Jones testified that on the day of the shooting she was working near Brookshire's at the Jason's Deli restaurant. She told police that she saw Petitioner in the outdoor area of the shopping center on the day of the crime. She had not seen Petitioner in several years, but she recognized him because they had attended Broadmoor Elementary School together. Police showed Jones a school yearbook. She confirmed that the person she saw that day was Petitioner, her former schoolmate. Tr. 556-62.

Detective Lane Smith of the Shreveport Police Department testified that he assisted in the investigation. When he arrived at the office on July 13, two days after the crime, he got word that another detective had received a Crime Stoppers tip that Petitioner was at a certain address on 68th Street. Several detectives went to the location and were searching the house when an officer reported over the radio that Petitioner had been seen running across nearby 70th Street. Smith and at least one other officer began a foot pursuit. As Smith exited a drainage ditch, a citizen told him that the man police were chasing had just run into a nearby alley. Detective Smith went in the alley and found Petitioner hiding beneath a vehicle. After several commands, Petitioner came from beneath the vehicle and was arrested. Tr. 584-90.

Petitioner was later advised of his Miranda rights, and he signed a waiver card. He then gave an audio-taped statement to Detectives Wray and Jeter. He admitted that he approached the victim from behind and grabbed her car keys so that he could drive around in her car. He said he did not have a plan before the crime began, observing that, "Stuff just happens sometime." He expressed that there was "no particular reason" for choosing his victim, and he desired her car because he "just kind of wanted to ride." Petitioner said that he had never fired the pistol before, and he claimed to not even know its caliber. He repeatedly stated that the victim's arm or package hit the gun and made it "accidentally" fire three times. Petitioner said that he later sold the pistol to an unknown man on the street. He expressed concern that the security guard was firing at him in an area where there were other people who could have been hit. Petitioner showed Detective Wray an abrasion on his thigh that appeared to be a graze wound. Finally, he admitted that he drove away in Mrs. Ritzheimer's car without her permission. He said, regarding his actions, that he felt "bad about it." Tr. 532-39 and audio tape filed as an exhibit in this case at Doc. 19.

The court instructed the jury that to convict for attempted second degree murder it must find that Petitioner attempted to kill Mrs. Ritzheimer and acted with a specific intent to kill. See La.R.S. 14:27 and 14:30.1. To convict on the separate charge of armed robbery, the jury was told that it must find that Petitioner took something of value that belonged to Mrs. Ritzheimer, that the thing of value was in the possession or immediate control of the victim when it was taken, and that Petitioner used force or intimidation against the victim to

accomplish the taking, and that Petitioner was armed with a dangerous weapon. Tr. 427. See La.R.S. 14:64. The jury convicted Petitioner on both counts.

Petitioner argued in a post-conviction application that the evidence was insufficient to support his convictions. In evaluating the sufficiency of evidence to support a conviction "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 99 S.Ct. 2781, 2789 (1979). The trier of fact has broad discretion to "resolve conflicts in testimony, to weigh evidence, and to draw reasonable inferences from basic facts to ultimate facts." Id. The Jackson inquiry "does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit." Herrera v. Collins, 113 S.Ct. 853, 861 (1993).

Petitioner's challenge to the sufficiency of the evidence, in both state and federal court, consists of a brief argument that there are witnesses that placed him at or around the scene of the crime before it occurred, but no witness positively saw Petitioner perpetrate the actual crimes. He urges that the identification evidence that was presented is unreliable.

The state court trial judge denied the application with a finding that the state "proved several key elements in regards to each charge Petitioner was convicted of" and that there was "more than sufficient evidence" to justify both convictions. Tr. 895. Petitioner next presented the argument to the state appellate court, which dismissed the misidentification

arguments with an observation that the jury "heard this applicant's own statement that he approached the victim, shot her and fled in her vehicle." The court, citing Jackson denied the claim. Tr. 996. The Supreme Court of Louisiana denied a writ application without comment. Tr. 1090.

This federal court may grant habeas relief in this circumstance only if the state court's decision was an "unreasonable application" of Jackson and its principles. 28 U.S.C. § 2254(d); Williams v. Taylor, 120 S.Ct. 1495, 1523 (2000); Santellan v. Cockrell, 271 F.3d 190, 193 (5th Cir. 2001). Under the unreasonable application clause, a federal court is permitted to grant the writ if the state court has identified the correct governing legal principle from the Supreme Court's decisions but unreasonably applied that principle to the facts of the prisoner's case. Williams, 120 S.Ct. at 1523. Even if the federal court, in its independent judgment, has a firm conviction that the state court was incorrect in its application of a federal constitutional principle, that alone does not permit the federal court to grant habeas relief. Relief is not permitted unless the state court decision was so wrong as to be objectively unreasonable. Lockyer v. Andrade, 123 S.Ct. 1166, 1175 (2003). And it is only the state court's ultimate decision, not the quality of its analysis or opinion, that is at issue. Neal v. Puckett, 286 F.3d 230, 246 (5th Cir. 2002)(en banc).

The state court's ultimate decision in this case was entirely reasonable and supported by a solid record. Petitioner's identification argument is undermined by the victim's certain identification and Petitioner's admission that he was the shooter and the man who took the

car. Petitioner argues that there was not sufficient evidence of intent to kill, considering the relatively minor injuries to the victim. Petitioner fired three shots from a large caliber handgun at an elderly woman at close range, and two of the rounds traveled through her body, causing considerable blood loss and nerve damage, and requiring removal of the spleen. Petitioner claimed he fired three times accidentally when the victim struck the gun, but the victim was adamant that she did not do so, and the security guard testified that the third shot came quite some time after the first two shots. A reasonable jury could reject Petitioner's claim and determine from all the surrounding facts that Petitioner acted with the intent to kill. Habeas relief is not available on this claim.

**Ineffective Assistance of Counsel**

Petitioner argues that he was "the victim of misidentification" and this would have been proven if trial counsel had pursued the defense. Petitioner argues that the reliability of the victim's identification could have been attacked because she was shown a single photograph of him while she was in the back of an ambulance soon after the shooting. Petitioner adds that counsel could have called Detective Wray at trial so that Wray's testimony from a preliminary examination could have been employed to bolster the misidentification defense. Wray testified at the preliminary exam that the victim was not shown a lineup and that he did not know whether she could identify her attacker. Petitioner contends that this testimony demonstrates inconsistencies in the evidence. He apparently implies that showing the victim a photograph was the same as presenting a lineup.

Petitioner bears the burden of proving two components, deficient performance and prejudice, to establish ineffective assistance of counsel. Counsel's performance was deficient only if he made errors so serious that, when reviewed under an objective standard of reasonable professional assistance and afforded a presumption of competency, he was not functioning as the "counsel" guaranteed by the Sixth Amendment. Strickland v. Washington, 104 S.Ct. 2052, 2064 (1984). Prejudice exists only if there is a reasonable probability that, but for the error, the result of the trial would have been different. A reasonable probability is one sufficient to undermine confidence in the outcome. Id. 104 S.Ct. at 2068.

The test for habeas purposes is not whether a petitioner made the showing required under Strickland. The test is whether the State court's decision – that the petitioner did not make the Strickland showing – was contrary to, or an unreasonable application of, the standards provided by Strickland's clearly established federal law. Williams v. Taylor, 120 S.Ct. 1495 (2000); Henderson v. Quarterman, 460 F.3d 654, 665 (5th Cir. 2006).

The state courts denied the ineffective assistance arguments with a few conclusory sentences. Perhaps there were questions that counsel could have asked or witnesses that she could have called in an effort to show that the victim's identification was unreliable, but counsel's efforts would have been a waste of time because the prosecution had Petitioner's unambiguous confession on audiotape that he was the man who shot the victim and took her car. Counsel's performance was not deficient in those circumstances. Furthermore, there is no reasonable probability that the verdict would have been different had counsel pursued

the issue. The state court's decision was not an objectively unreasonable application of Strickland, so habeas relief should be denied with respect to this claim.

**Double Jeopardy**

Petitioner argued in his post-conviction application that "it violated the Double Jeopardy Clause" to convict him of both (1) attempted second degree murder and (2) armed robbery based on the same incident. Petitioner apparently tries to bring his case within the rule that when proof of a felony is an essential element of a first degree murder or attempted first degree murder (often called a felony-murder prosecution), double jeopardy precludes conviction for both the murder offense and the underlying felony. See State v. Holmes, 653 So.2d 642, 645 (La. App. 5th Cir. 1995). This case, however, was not a felony-murder prosecution where Petitioner could be convicted of a murder offense if he committed the murder during the course of the armed robbery. Under Louisiana law, "there is no such crime as attempted second degree felony murder." State v. Landfair, 979 So.2d 619, 622 (La. App. 5th Cir. 2008). Rather, attempted second degree murder requires the specific intent to kill, and that was how the jury was charged.

The Supreme Court, in determining whether two statutes punish twice for the same offense so that the Double Jeopardy Clause is violated, asks whether each offense must contain an element not contained in the other. Blockburger v. U.S., 52 S.Ct. 180 (1932); U.S. v. Agofsky, 458 F.3d 369, 371 (5th Cir. 2006). As the state appellate court noted in denying a writ application with respect to the post-conviction application, intent to kill is not an

element of armed robbery, and none of the aspects of the armed robbery offense are elements of attempted second degree murder. The elements of each crime stand alone, and double jeopardy does not apply. Tr. 997. The Fifth Circuit has also recognized that the Double Jeopardy Clause "does not prohibit prosecution for specific intent murder and armed robbery." Taylor v. Whitley, 933 F.2d 325, 328 (5th Cir. 1991). The state court's rejection of this claim was entirely reasonable, so habeas relief is not available with respect to this third and final claim.

Accordingly;

**IT IS RECOMMENDED** that the petition for writ of habeas corpus be **denied**, and that Petitioner's complaint be **dismissed with prejudice**.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within ten (10) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 10 days after being served with a copy, shall bar that

party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 13th day of July, 2009.

MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE